UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| ROSA MARGARITA RIVERA,<br><br>            Plaintiff,<br>  v.<br>PORTFOLIO RECOVERY ASSOCIATES, LLC, et al.,<br><br>            Defendants. | No. C 13-2322 MEJ<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>**(Docket No. 22)** |

## INTRODUCTION

Plaintiff Rosa Margarita Rivera ("Plaintiff") brought the instant action against Defendants Portfolio Recovery Associates, Legal Recovery Law Offices, Inc., and Andrew Paul Rundquist ("Defendants"), alleging that they violated her rights under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1992o, and the California equivalent of the FDCPA, known as the Robbins-Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788-1788.32. This matter is presently before the Court on Plaintiff's Motion for Attorney's Fees and Costs. Dkt. No. 22. Defendants have filed an Opposition (Dkt. No. 25), to which Plaintiff filed a Reply (Dkt. No. 26). The Court finds Plaintiff's Motion suitable for disposition without oral argument and VACATES the October 3, 2013, hearing. Civ. L.R. 7-1(b); Fed. R. Civ. P. 78(b). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court now issues the following order.

## BACKGROUND

In her Complaint, Plaintiff alleges that an unrelated third party named "Rosa Rivera" incurred debt on an HSBC Card Services credit card, which was transferred to Portfolio Recovery Associates

for collection. Compl. ¶¶ 16-17, Dkt. No. 1. On May 22, 2012, Defendants filed a lawsuit against Plaintiff in the San Francisco County Superior Court, which sought to collect $2,461.18 in principal, as well as interest and attorney's fees and costs. *Id.* ¶ 18. After receiving the complaint, Plaintiff's granddaughter contacted Defendants and informed them that Plaintiff never had an HSBC credit card and that Defendants were suing the wrong person. *Id.* ¶ 43. When Defendants refused to dismiss the complaint, Plaintiff retained legal counsel, thereby incurring attorney's fees and costs. *Id.* ¶ 44.

Plaintiff alleges that, beginning July 10, 2012, and continuing through May 8, 2013, her counsel repeatedly notified Defendants that they had targeted and sued the wrong Rosa Rivera. *Id.* ¶¶ 45-56. However, Defendants continued to prosecute the state court action until days before the scheduled trial, at which time they filed a Request for Dismissal Without Prejudice on May 9, 2013. *Id.* ¶ 57.

Plaintiff filed her Complaint against Defendants in this Court on May 22, 2013. Compl., Dkt. No. 1. Thereafter, on July 19, 2013, Defendants served an Offer of Judgment Pursuant to Federal Rule of Civil Procedure 68. Dkt. No. 19-1 at 1. Defendants' offer included judgment in Plaintiff's favor in the amount of $8,500, plus an award of "reasonable attorney's fees and costs, to be mutually agreed upon by the parties, or if no agreement can be reached, to be determined by the Court in accordance with 15 U.S.C. § 1692k." *Id.* at 1-2. In their offer, Defendants stated: "This offer is not [to] be construed as either an admission that Defendants . . . are liable in this action, or that Plaintiff(s) have suffered any damage." *Id.* at 2. Plaintiff filed her Notice of Acceptance of Offer of Judgment on August 2, 2013. Dkt. No. 19. Thereafter, on August 8, 2013, the Court entered judgment pursuant to the terms of the offer. Dkt. No. 20.

On August 22, 2013, Plaintiff filed the present Motion for Attorney's Fees and Costs. Dkt. No. 22. Plaintiff seeks a total award of $20,796.54. *Id.* at 9; Reply at 9.

**LEGAL STANDARD**

"In enacting the FDCPA, Congress sought to counter the abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004). An aggrieved party may thus recover actual damages, statutory

2

1  damages and seek an award of attorney's fees and costs where the provisions of the FDCPA have
2  been violated. 15 U.S.C. § 1692k(a). The Rosenthal Act is California's counterpart to the FDCPA
3  and incorporates its salient provisions. Cal. Civ. Code § 1788.17.
4        Both the FDCPA and the Rosenthal Act direct a court to award attorney's fees to a prevailing
5  consumer. 15 U.S.C. 1692k(a)(3); Cal. Civ. Code § 1788.30(c). In determining a fee award, district
6  courts apply a two-step process to calculate the appropriate award. *Fisher v. SJB-P.D., Inc.*, 214 F.3d
7  1115, 1119 (9th Cir. 2000). First, the court calculates the presumptive fee award, also known as the
8  "lodestar figure," by multiplying the number of hours reasonably expended on the litigation by a
9  reasonable hourly rate. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010).
10       Second, "in appropriate cases, the district court may adjust the 'presumptively reasonable'
11 lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70
12 (9th Cir. 1975) . . . that are not subsumed into the initial lodestar calculation." *Intel Corp. v.*
13 *Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). Specifically, the *Kerr* factors are: (1) the time
14 and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to
15 perform the legal services properly; (4) the preclusion of other employment by the attorney due to
16 acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time
17 limitations imposed by the client or the circumstances; (8) the amount involved and the results
18 obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability"
19 of the case; (11) the nature and length of the professional relationship with the client; and (12)
20 awards in similar cases. *Kerr*, 526 F.2d at 70. "The lodestar amount presumably reflects the
21 novelty and complexity of the issues, the special skill and experience of counsel, the quality of
22 representation, and the results obtained from the litigation." *Intel Corp.*, 6 F.3d at 622; *see*
23 *also Perdue v. Kenney A ex rel Winn*, 559 U.S. 542, 553 (2010) (noting that the lodestar figure
24 includes "most if not all of the relevant factors constituting a reasonable attorney's fee") (internal
25 quotations omitted). Thus, in appropriate cases, the court may examine the remaining factors to
26 determine whether an enhancement or decrease in the lodestar figure is warranted. *Clark v. City of*
27 *Los Angeles*, 803 F.2d 987, 990 (9th Cir. 1986). However, there is a strong presumption that the
28

1 lodestar figure represents a reasonable fee and any upward or downward adjustment of that figure is
2 proper only in "rare and exceptional cases." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041,
3 1045 (9th Cir. 2000) (internal citations omitted).[1]

## DISCUSSION

In this case, Plaintiff accepted Defendants' offer of judgment and there is no dispute that she is the prevailing party. Further, Defendants' offer included an award of "reasonable attorney's fees and costs, to be mutually agreed upon by the parties, or if no agreement can be reached, to be determined by the Court in accordance with 15 U.S.C. § 1692k." Dkt. No. 19-1 at 1-2. Thus, there is also no dispute that Plaintiff is entitled to an award of attorney's fees and costs. Instead, Defendants' Opposition focuses on the reasonableness of Plaintiff's fee request, arguing that, "[g]iven the gross excessiveness of the fees claimed in this matter for a case that was not litigated," Plaintiff's fee request is unreasonable. Opp'n at 3.

To support her fee request, Plaintiff provided itemized invoices detailing the services rendered by her attorneys from May 16, 2013, to August 22, 2013; the hours worked in rendering those services, broken down by task; and the hourly rate billed by the attorney performing a particular task. Schwinn Decl., Ex. A, Dkt. No. 22-2; Ly Decl., Ex. B, Dkt. No. 22-4. These invoices represent that

---

[1] For attorneys' fee awards authorized under California law, the Court applies a similar framework to determine the appropriate fee amount. The fee-setting inquiry in California begins with the lodestar, which represents the number of hours reasonably expended multiplied by the reasonable hourly rate. *Ctr. for Biological Diversity v. Cnty. of San Bernardino*, 185 Cal. App. 4th 866, 895 (2010); *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010). The lodestar is considered the basic fee for comparable services in the legal community and it may be adjusted by the court based on several factors. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977)). The California Supreme Court has explained that "[t]he purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market value for such services." *Id*. (citing *Serrano*, 20 Cal. 3d at 49). To determine whether a multiplier should be applied, the court considers the following factors: (1) the novelty or difficulty of the questions involved; (2) the expertise and capability of counsel; (3) the results obtained; (4) the contingent risk involved in the case; (5) the extent to which the nature of the litigation precluded other employment by the attorneys; and (6) whether the attorneys received public and/or charitable funding. *Serrano*, 20 Cal. 3d at 48-49.

4

1  between May 16, 2013, to August 22, 2013, Plaintiff was billed the following amount for work
2  performed by Mr. Schwinn and Ms. Ly:

| Attorney | Hours Billed | Hourly Rate | Total |
|---|---|---|---|
| Fred Schwinn | 26.5 | $450.00 | $11,925 |
| Janet Ly | 20.4 | $300.00 | $6,120 |
| **TOTAL** | **46.9** | | **$18,045** |

Schwinn Decl. ¶¶ 12, 14; Ly Decl. ¶¶ 12, 13. Mr. Schwinn states he has spent "an additional .2 hours in this matter reviewing Defendants' Opposition to Plaintiff's Motion herein, and an additional 3.8 hours drafting Plaintiff's Reply Memorandum and related documents. Furthermore, [he] anticipate[s] an additional .5 hours of attorney time will be incurred for preparing and attending the hearing in this matter." Suppl. Schwinn. Decl. ¶ 3, Dkt. No. 26-1. Thus, Plaintiff seeks an additional $2,025 (4.5 hours x $450 per hour), for a total fee award of $20,070.

Plaintiff also seeks an award of costs in the amount of $1,423.24 as follows: (1) $400 in filing fees; (2) $23.60 in photocopying fees; (3) $227 in process server fees; and (4) $61.02 in mileage expenses. Schwinn Decl. ¶ 15.

### 1. Counsel's Reasonable Hourly Billing Rates

The Court first evaluates whether counsel's billing rates are reasonable. "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 971 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.3d 403, 407 (9th Cir. 1990). As stated above, Plaintiff's counsel claims an hourly rate of $450 for Mr. Schwinn and $300 for Ms. Ly. Defendants raise no specific objections to the hourly rates, although they do argue that Mr. Schwinn's rate is "excessive" and note that he has increased his hourly rate by $100 in two years. Opp'n at 4, 6.

Based on the Court's review of counsel's experience and education, as well as comparing

those rates to other attorneys with equivalent skill, experience, and reputation in Northern California, the Court finds Mr. Schwinn's billing rate of $450 per hour and Ms. Ly's rate of $300 per hour are reasonable. In his Declaration, Mr. Schwinn states that he is a shareholder in the law firm Consumer Law Center, Inc. Schwinn Decl. ¶ 1. He is a 1994 graduate *magna cum laude* of Washburn University in Topeka, Kansas, and a 1997 graduate of Washburn University School of Law. *Id.* ¶ 4. His practice is limited exclusively to the representation of consumers, with particular emphasis on representing consumers under the FDCPA, Truth in Lending Act, Telephone Consumers Protection Act, Uniform Commercial Code, common law fraud, misrepresentation and deceit, usury, and other laws enacted to protect consumers. *Id.* ¶ 5. Mr. Schwinn was honored as "Attorney of the Year" in 2013 by Community Legal Services in East Palo Alto, and was also honored as "Outstanding Volunteer Attorney" in 2011 and 2012 by the Volunteer Legal Services Program of the San Francisco County Bar Association. *Id.* ¶ 7. He has an "AV Preeminent" rating by Martindale-Hubbell's Peer Review Ratings system in 2012 and 2013. *Id.* ¶ 9. Plaintiff also submitted the declaration of Mr. Ronald Wilcox, another consumer protection attorney, to support the reasonableness of Mr. Schwinn's requested hourly rate. Wilcox Decl. ¶¶ 13-14, Dkt. No. 22-8 (stating that the market rate in the San Francisco Area for litigation of similar difficulty and complexity range from "$300 to $600+ per hour, depending on the skill, experience, and reputation of the attorney").

Ms. Ly received her undergraduate degree from the University of California, Berkeley, and received her law degree from Santa Clara University School of Law in 2007 with an emphasis in Public Interest Law. Ly Decl. ¶ 3. She was admitted to the State Bar of California in 2007, and to the United States District Court for the Northern District of California in 2008. *Id.* Ms. Ly is the founder and principal attorney of Janet Ly Law Office, located at 201 Spear Street, Suite 1100 San Francisco, California 94105. *Id.* ¶ 2. Her practice focuses exclusively on representing consumers in debt collection defense and collection abuse, auto repossessions and credit reporting. *Id.* Since she was admitted to practice law in 2007, she has focused in the area of consumer and public interest litigation, focusing on cases under the FDCPA, Truth In Lending Act, California Rosenthal Fair Debt Collection Practices Act, California Rees-Levering Automobile Sales and Finance Act, and other

laws enacted to protect consumers. *Id.* ¶ 5. She is a member of the National Association of Consumer Advocates, and she also serves on the volunteer attorney panel for the Bar Association of San Francisco Justice and Diversity Center Consumer Debt Collection Clinic, and the Debt Collection Clinic of the Alameda County Bar Association. *Id.* ¶ 4.

The Court finds that Plaintiff has adequately shown, through the affidavits attached to her Motion, that $450 per hour and $300 per hour for Mr. Schwinn and Ms. Ly, respectively, are within the range of reasonable hourly rates for attorneys of comparable skill, experience, and reputation litigating similar cases in this Court's jurisdiction. *See, e.g., Palmer v. Far West Collection Servs., Inc.*, 2008 WL 5397140, at *1 (N.D. Cal. Dec. 18, 2008) (awarding fees in successful FDCPA action for three attorneys at rates of $325 and $465 per hour).

2.  <u>Reasonableness of Hours Expended in Litigating the Case</u>

Having determined counsel's reasonable billing rates, the Court turns to the second component of the lodestar calculation: ascertaining the number of hours reasonably expended litigating this matter. The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhardt*, 461 U.S. 424, 434 (1983); *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The district court may also exclude any hours that are excessive, redundant, or otherwise unnecessary. *Id.* at 434.

After the party seeking fees has come forward with its evidence supporting the time billed, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). The party opposing fees must specifically identify defects or deficiencies in the hours requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees. *Cancio v. Fin. Credit Network, Inc.*, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005). Even if the opposing party has not objected to the time billed, the district court "may not uncritically accept

a fee request," but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F. 2d 1378, 1385 (9th Cir. 1984)); *see also McGrath v. Cnty. of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting that court may not adopt prevailing party's representations without conducting an independent review of the fee application).

In their Opposition, Defendants raise several arguments why they believe Plaintiff's fee request is either unreasonable, excessive, redundant, or otherwise unnecessary in light of the fact that the lawsuit did not proceed beyond the filing of the original complaint. The Court will examine each argument in turn.

### *a. Preparing for and Attending Hearing*

As an initial matter, Mr. Schwinn pre-billed .5 hours for preparing for and attending the hearing on Plaintiff's Motion. However, because the Court vacated the hearing on the Motion for Attorney's Fees well before the October 3 hearing date, the Court deducts the .5 hours from the fee award.

### *b. Fees Related to the Complaint*

Defendants argue that Plaintiff's fee documentation is inadequate. Opp'n at 3. Defendants first point to the fees claimed for drafting the Complaint in this matter. On May 18, 2013, Mr. Schwinn claimed 4.5 hours for drafting the Complaint. Schwinn Decl., Ex. A, p. 1. On May 20, he claimed an additional 8.3 hours for drafting the Complaint. *Id.* Mr. Schwinn also claimed 1 hour for discussing with Ms. Ly on May 20 and 21 when and how to file the Complaint. *Id.* at 1-2. On May 22, 2013, Mr. Schwinn claimed 0.2 hours for filling out the civil cover sheet and summons forms. *Id.* at 2. On May 20, 2013, Ms. Ly claimed 1 hour for reviewing the Complaint draft. Ly Decl., Ex. B at 1. Ms. Ly also claimed 0.2 hours on May 21 for discussing with Mr. Schwinn when and how to file the Complaint. *Id.* In all, Mr. Schwinn and Ms. Ly claimed they expended a total of 15.2 hours drafting and filing the complaint. Defendants argue that "[t]he time expended is excessive on its face, especially considering the degree of experience and skill Mr. Schwinn claims to have in these

matters, experience for which Mr. Schwinn believes he should be paid an excessive hourly rate of $450." Opp'n at 4. Defendants further argue that the Complaint "reads very similarly to the cross-complaint Ms. Ly filed a year earlier in the state court action." *Id.*

Upon review of the billing records, the Court finds that certain entries are reasonable. The one hour Ms. Ly spent reviewing the Complaint is not excessive, nor is the time co-counsel spent discussing the Complaint. The Court also finds that .2 hours for filling out the civil cover sheet and summons forms is not excessive. However, the 12.8 hours Mr. Schwinn claims for drafting the Complaint is unreasonable. First, the Court notes that some of the allegations in the state court cross-complaint are similar to the claims made in the Complaint filed in this case. Given that Ms. Ly drafted the cross-complaint less than one year prior, it is unclear why Mr. Schwinn drafted the entire Complaint here. The Court finds that counsel could have avoided duplicative efforts had Ms. Ly contributed to drafting the Complaint. Further, Ms. Ly bills at $300 per hour, while Mr. Schwinn bills at $450; thus, not only were duplicative efforts made, they were also more expensive.

Plaintiff argues that Defendants' assertion that the Complaint reads similarly to the cross-complaint is false and misleading. Reply at 5. In support of this argument, Plaintiff points out that the state court cross-complaint had no malicious prosecution claims. *Id.* Plaintiff argues that the bulk of the time spent drafting the Complaint herein "involved precisely verifying the facts alleged for the malicious prosecution claim. Unlike a 'check the box' complaint commonly used in collection actions, a malicious prosecution claim can not be brought casually – at least, not by competent counsel." *Id.* While the Court appreciates the effort Mr. Schwinn put into drafting the malicious prosecution claim, it is also aware that other courts have found that researching and drafting an FDCPA claim should take far less time. *St. Bernard v. State Collection Serv., Inc.*, 782 F. Supp. 2d 823, 828 (D. Ariz. 2010) (finding that FDCPA complaints should take no more than five hours to draft); *Silva v. Patenaude & Felix, P.C.*, 2010 WL 2000523, at *3 (N.D. Cal. May 12, 2010) (finding 2.3 hours for drafting FDCPA complaint excessive where counsel had filed a similar complaint in another case). Since Plaintiff's counsel has represented himself as an experienced

litigator of FDCPA claims, he should be held to the hours that other experienced FDCPA attorneys would bill for filing such a complaint.  Moreover, the Court must take into account the fact that Ms. Ly drafted the cross-complaint, yet she did not contribute to drafting the Complaint here.  However, the Court finds it appropriate to permit additional time for the drafting of the malicious prosecution claim.  Thus, the 12.8 hours Mr. Schwinn spent drafting the complaint is reduced by half, to 6.4 hours.

### c. *Time to Re-Research the Cross-Complaint*

In her billing records, Ms. Ly claims 1.2 hours for research related to damages.  Ly Decl., Ex. B at 1.  Defendants argue that this time is duplicative, unnecessary and excessive.  Opp'n at 4.  Specifically, Defendants argue that the damages in the state court action are the same as those in the federal action, and that Ms. Ly, "with the alleged experience and skill deserving of a $300 per hour rate, and with the alleged experience and skill of her co-counsel, should not require 1.2 hours to look up 15 U.S.C. § 1692k and read it." *Id.*  Plaintiff fails to address this argument in her Reply and, given that the damages are the same in both courts, the Court finds this billing entry duplicative.  Accordingly, the Court shall deduct the 1.2 hours Ms. Ly spent researching damages.

### d. *Visits to Plaintiff's Residence*

Ms. Ly claims time for four visits to Plaintiff's home plus mileage, for a total of 6.2 hours.  Ly Decl., Ex. B at 1-3.  Similarly, Mr. Schwinn claims time for travel to/from San Francisco for a meeting with Plaintiff and Ms. Ly to review the "Complaint and facts of the case," as well as "[d]iscussing what is required of a Plaintiff in a federal court case."  Schwinn Decl., Ex. A at 2.  Defendants argue that the consultations were "duplicative and unnecessary considering the federal action was a redraft of the state action."  Opp'n at 5.  Defendants further argue that, "considering the consultations could have been handled by more economically feasible means, including but not limited to telephone conferences with plaintiff's niece, . . . the 9.2 hours expended driving to plaintiff's residence should be stricken from the total fees requested." *Id.*  In response, Plaintiff argues that "[m]eeting a senior citizen client in her home to gather facts for a fact-heavy Complaint is entirely reasonable, and compensable."  Reply at 7.  Upon review of the parties' arguments, the Court

10

does not find this time excessive and therefore declines to deduct it from Plaintiff's fee request.

### e.     Comparison to Scott Case

Finally, Defendants argue that Plaintiff's requested fees are grossly disproportionate to fees Mr. Schwinn has been awarded in similar cases. Opp'n at 6. Specifically, Defendants direct the Court's attention to *Scott v. Fed. Bond and Collection Serv., Inc.*, 2011 WL 3652531 (N.D. Cal. Aug. 19, 2011). In that case, Mr. Schwinn was awarded $17,500.00 in fees in an FDCPA action that he stated required 49.6 hours of work. *Id.* at *5, 8. Defendants argue that Mr. Schwinn spent roughly the same amount of time and was awarded the same amount of fees he is requesting here, yet the "glaring" difference between the two cases is that in *Scott*, Mr. Schwinn filed a complaint, filed an amended complaint, prevailed on a motion to strike, survived a motion to dismiss, propounded written discovery, answered written discovery, appeared at a case management conference, and concluded litigation of the FDCPA claim 15 months after filing. Opp'n at 6. In comparison, Defendants point out that in the present case, Mr. Schwinn filed suit in May and, less than two months later, they conveyed their Rule 68 offer. *Id.* Defendants argue that "[i]n just two short years, Mr. Schwinn has increased his hourly rate by $100 and has figured out how to place as many hours into a two-month case as he once placed into a fifteen-month case. In the interests of justice and in the interests of preserving the integrity of the legal profession, the court should reduce the requested fees to $2,436.08; that is, 13.5% of the requested amount consistent with two months being 13.5% of fifteen months." *Id.* at 6-7.

In response, Plaintiff argues that the difference between the two cases is that the majority of the attorney time in *Scott* was incurred after the filing of the Complaint, and not before, as in the case at bar. Reply at 4. Plaintiff further argues that the two cases are very different, noting that *Scott* was a "letter case" – an enforcement action for statutory damages due to a single violative collection letter, whereas the case at bar brought not only FDCPA and Rosenthal claims, but also a malicious prosecution claim seeking actual and punitive damages, as well as trebled damages due to Defendants' harassment of a senior citizen. *Id.* at 4-5. Plaintiff contends that the case at bar required more time to glean facts buried in pleadings, email communications and other correspondence. *Id.* at

11

5.

Having considered the parties' arguments, the Court finds a reduction appropriate. A review of the docket in *Scott*, C-10-2825 LHK, shows that Scott filed her original complaint on June 28, 2010 (Dkt. No. 1), and filed a first amended complaint on July 14 (Dkt. No. 6), which contained three claims for relief under the FDCPA, the Rosenthal Act, and California Civil Code section 1812.700(a). On August 27, Scott filed three requests for default against the three named defendants. Dkt. Nos. 10-12. The parties subsequently filed a stipulation to withdraw the default requests, after which two defendants filed a joint answer on August 31 (Dkt. No. 15), and the third defendant answered on October 13, asserting nineteen affirmative defenses (Dkt. No. 25). The parties began discovery and law and motion practice in October 2010 – they exchanged initial disclosures pursuant to Rule 26(a)(1), and served and responded to interrogatories, requests for the production of documents, and requests for admissions. *Scott*, 2011 WL 3652531, at *2 (citations omitted). The parties also met and conferred regarding discovery. *Id.*

On October 13, 2010, Scott filed a motion to strike the third defendant's affirmative defenses. Dkt. No. 28. All three defendants opposed this motion and Scott therefore also needed to filed a reply brief. Dkt. Nos. 38, 39. On December 14, 2010, the defendants filed a Rule 68 Offer of Judgment, which Scott rejected. Dkt. No. 34, Ex. A. The defendants then moved to dismiss, which Scott opposed. Dkt. Nos. 34, 37. The court denied the motion to dismiss and granted Scott's motion to strike with regard to fifteen of the nineteen affirmative defenses. Dkt. No. 45. On February 3, 2011, Plaintiff informed the court that she had accepted the defendants' second Rule 68 offer of judgment. Dkt. No. 48. The parties also prepared two case management statements and participated in two case management conferences. Dkt. Nos. 21, 29, 41, 42, 46.

In comparison, Plaintiff filed her Complaint on May 22, 2013, and accepted Defendants' Offer of Judgment on August 2, 2013. Dkt. Nos. 1, 19. In between, Defendants filed a Motion to Dismiss, but Plaintiff filed her acceptance before any opposition was due. As Defendants did not file an answer, they also did not assert any affirmative defenses, and Plaintiff therefore had no need to file a motion to strike. The parties did not prepare any case management statements and did not

1 participate in any case management conferences. Based on the billing records, it does not appear that
2 the parties engaged in any discovery whatsoever. The scope of work completed in a 15-month period
3 in *Scott* – including discovery, motion practice, and case management conferences – does not
4 compare to the Complaint and acceptance of offer of judgment in this case.

Although Plaintiff argues that the two cases are actually similar because Plaintiff's case includes a malicious prosecution claim seeking actual and punitive damages, and that the case therefore required more front-end work "to glean facts buried in pleadings, email communications and other correspondence," Opp'n at 5, Plaintiff has failed to provide any authority, and the Court is unaware of any, which establishes that the time spent drafting a malicious prosecution claim is comparable to conducting discovery (including exchanging initial disclosures, and serving and responding to interrogatories, requests for the production of documents, and requests for admissions), drafting a motion to strike and an opposition to a motion to dismiss, drafting case management conference statements, and participating in case management conferences.

The Court begins with the presumption that the lodestar amount is reasonable. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001). However, given the analysis above, the Court finds that Defendants have met their "burden of . . . challenging the accuracy and reasonableness" of the lodestar figure. *Gates*, 987 F.2d at 1397-98. Thus, for the reasons discussed above, the Court finds that the circumstances here warrant a percentage reduction in the lodestar figure. *Id.* at 1150-51 (approving of a percentage or across-the-board reduction in fee awards where the district court provides a reasonable explanation for the cut). Accordingly, the Court finds a 50% reduction appropriate. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995) (upholding across-the-board reduction of $300,000 fee award); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (upholding 50% reduction of a $70,000 fee award).

   *f.*  *Summary*

Based on the analysis above, the Court GRANTS Plaintiff's Motion for fees in the amount of **$10,552.50**. The Court calculates the fee award as follows:

Mr. Schwinn claims 41 hours at $450 per hour, totaling $18,450. This amount is reduced by

13

.5 hours for the hearing that the Court vacated and 6.4 hours for drafting the Complaint, bringing the revised total to $15,345 (34.1 hours x $450). The award is further reduced by 50%, bringing Mr. Schwinn's total fees award to **$7,672.50**.

Ms. Ly claims 20.4 hours at $300 per hour, totaling $6,120. This amount is reduced by 1.2 hours for the time claimed for research related to damages, bringing the revised total to $5,760 (19.2 hours x. $300). The award is further reduced by 50%, bringing Ms. Ly's total fees award to **$2,880.00**.

### 3. Costs

Plaintiff also seeks an award of costs in the amount of $1,423.24 as follows: (1) $400 in filing fees; (2) $23.60 in photocopying fees; (3) $227 in process server fees; and (4) $61.02 in mileage expenses. Schwinn Decl. ¶ 15. Defendants do not dispute that Plaintiff is entitled to costs for filing, photocopying, and process server fees under the FDCPA. Therefore, the Court GRANTS Plaintiff's motion with regard to these costs. *Scott*, 2011 WL 3652531, at *4 (awarding photocopying expenses, filing fees, postage, and process server fees in FDCPA case).

In their Opposition, Defendants do not directly address Plaintiff's costs, but in their discussion related to the fees counsel seeks, they do object to the time counsel billed for "time and mileage" related to consultations at Plaintiff's home. Although Defendants raise this issue in relation to Plaintiff's claimed fees, the Court construes the argument to apply to the claimed $61.02 in mileage costs as well. However, as discussed above, the Court finds that this time is reasonable and, therefore, no deduction shall be made for mileage. *See, e.g., Johnson v. Dist. of Columbia*, 850 F. Supp. 2d 74, 82 (D.D.C. 2012) ("Time spent traveling is time that is not spent doing billable work and, in my experience, lawyers traditionally charge their clients for travel when they are doing so for their client's business."); *Rand-Whitney Containerboard v. Town of Montville*, 2006 WL 2839236, at *27 (D. Conn. Sept. 5, 2006) ("It is also reasonable that counsel be reimbursed for mileage and parking costs."). Therefore, the Court GRANTS Plaintiff's motion with regard to costs, and awards Plaintiff **$1,423.24**.

**CONCLUSION**

Based on the analysis above, the Court GRANTS Plaintiff's Motion for Attorney's Fees in the amount of **$10,552.50** ($7,672.50 for Mr. Schwinn and $2,880.00 for Ms. Ly), and GRANTS Plaintiff's Motion for Costs in the amount of **$1,423.24**.

**IT IS SO ORDERED.**

Dated: September 23, 2013

_____
Maria-Elena James
United States Magistrate Judge